## No. 27134

**Rodney Joseph Winkler and Pet City, Inc., a Colorado corporation v. Colorado Department of Health, Edward G. Dreyfus, as Secretary of the Colorado Board of Health and as Executive Director of the Colorado Board of Health and Dr. John Emerson, as Director of Veterinary Medicine of the Colorado Board of Health**

(564 P.2d 107)

Decided May 9, 1977.

Brenman, Sobol & Baum, Martin Zerobnick, Steven L. Maynard, for plaintiffs-appellants.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Mary A. Rashman, Assistant, for defendants-appellees.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

In 1974, the Colorado Department of Health adopted certain regulations,[1] the conceded effect of which is to prohibit importation of pets for resale from states whose licensing laws and regulations for commercial pet dealers are not as stringent as those of Colorado. The regulations exempt from this prohibition persons who import pets not for resale and exclusively for breeding purposes or for personal use. After the regulations were upheld by the Denver district court, the plaintiffs, who are commercial pet importers, brought this appeal. They attack the validity of these regulations on four grounds: the regulations (1) were adopted in violation of statutory authority, (2) are in excess of the state's police power and violative of due process, (3) are violative of equal protection, and (4) are in conflict with the Commerce Clause of the United States Constitution. We find these arguments to be unpersuasive and, accordingly, affirm the judgment of the trial court.

I.
*Statutory Authority*

The plaintiffs contend that the following statutory provision precluded adoption of the instant regulations in 1974:

"It shall be the duty of the board *on or before thirty days after July 1, 1967* to establish by regulation such minimum standards of physical facility, sanitation, humane care, and method of operation as in the opinion of the board is necessary to carry out the provisions of this article." (Emphasis added.)

1967 Perm. Supp., C.R.S. 1963, section 66-30-14.[2]

It would be unreasonable to read this provision as a proscription against *any subsequent* administrative promulgation of regulations. The General Assembly having initially given a broad grant of power to create such regulations, it would not be consistent to assume that the legislative

---

[1] Colorado State Board of Health, "Regulations Concerning Pet Animals, Standards for Licensure and Maintenance of Pet Shops, Boarding Kennels and Breeding Kennels," Regulations VI(b) and VII (Aug. 28, 1974).

[2] Now section 12-57-107, C.R.S. 1973. The present statute changes the words "shall be the duty" to "is the duty."

intent would be to freeze the regulations without the flexibility of subsequent amendment. Moreover, C.R.S. 1963, section 66-1-8,[3] grants to the Board of Health the power to adopt rules and regulations in the administration of the public health laws of the state, which includes the "Pet Shop Act" under which the instant regulations were promulgated.

## II.
### Police Power and Due Process

The regulations in this case were adopted to protect the public health by preventing the unregulated importation of domestic animals. In adopting the regulations, the Board of Health acted on evidence that such animals can carry diseases and parasites communicable to human beings. Public protection from this hazard constitutes, of course, a legitimate state objective and interest. See, e.g., Reid v. Colorado, 187 U.S. 137, 23 S.Ct. 92, 47 L.Ed. 108 (1909). Moreover, the licensing requirement in this case was reasonably designed to further this objective by defining certain standards for maintenance of these animals. By subjecting, with certain exemptions noted below, all pet importers to health standards at least as strict as those imposed upon in-state suppliers, the regulations insure that a minimal level of health standards regarding pets in intrastate commerce will exist.[4]

## III.
### Equal Protection

Plaintiffs contend that because breeders and those importing pets for personal use are exempted from the regulations, the regulations violate equal protection. U.S. Const., Art. XIV; Colo. Const. Art. V, Sec. 25. We do not accept the plaintiffs' rationale. First, we perceive no suspect category or fundamental right which is implicated in the regulatory scheme at issue. See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Edwards v. Price, 191 Colo. 46, 550 P.2d 856 (1976).

Second, insofar as the health standards imposed upon all commercial pet sellers constitute a form of economic regulation by the state, the judicial scrutiny ceases when it is determined that the distinction has a

---

[3] Now section 25-1-108(1)(c)(I), C.R.S. 1973.
[4] Plaintiffs have not raised on appeal, nor do we consider, the argument that the regulations constitute an impermissible "irrebutable presumption" that any pet owner operating in a state with legal standards below those of Colordo will be engaged in a substandard operation. See Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

reasonable basis and serves a legitimate state goal. As the United States Supreme Court recently noted with respect to the Fourteenth Amendment:

"When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. *See, e.g., Lenhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude."

*City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam); *accord, Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical of Okl.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952).

The exemptions for "non-commercial" importers were based upon a determination that pets distributed through commercial channels posed the greatest health hazard. The focus of the discrimination in this case is upon those pet sellers whose merchandise is intended to come into direct contact with the public. We see no basis for second-guessing the legislative determination that a diseased animal intended for commercial sale constitutes a greater health hazard than one removed from the public exposure which is basic to commercial distribution. A legislature need not necessarily implement an all-or-none, totally comprehensive health measure all at once. *See Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). Accordingly, we find that the class distinction in this case is constitutional. *Compare Petrafeck v. Industrial Commission*, 191 Colo. 566, 554 P.2d 1097 (1976); *Dunbar v. Hoffman*, 171 Colo. 481, 468 P.2d 742 (1970).

## IV.
### Commerce Clause

Finally, we do not perceive that the Colorado Pet Shop Act or the regulations thereunder constitutes an unconstitutional burden on interstate commerce, or an intrusion into a federally preempted domain. The Colorado regulations do entail a form of "prohibition" so that the Commerce Clause is clearly involved. *Compare Hughes v. Alexandria Scrap Corp., supra* (state "participation" in market, but not prohibition upon private participation, may be exempt from Commerce Clause restraints). However, we disagree with plaintiffs' contention that *any* burden on inter-

state commerce automatically entails a constitutional infraction. First, the appropriate test is clearly one of balancing local and federal interests:

"Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

The record in this case fails to demonstrate that there is or will be even an "incidental" burden on interstate commerce. Moreover, this is not a case where "[t]he only justification the state offers for discriminating against interstate commerce is administrative convenience," or where the regulation creates a "favored" local market. *Matthews v. Department of Revenue*, 193 Colo. 44, 562 P.2d 415. *All* persons engaged in the sale of pets in Colorado are subject to the same stringent standards under the regulations. Finally, we find that the concern for public health outweighs any minor collateral impact on interstate commerce in this context.

■ The doctrine of preemption does not invalidate the Colorado regulations. Many federal powers operate concurrently with the general police power of the states to protect the health and welfare of the citizenry. *See Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). While there exists a federal preemptive *capability* in this case, we find no basis in the record in this case for demonstrating a federal *intent* to preempt the field. Both elements are generally required. *See California v. Zook*, 336 U.S. 725, 69 S.Ct. 841, 93 L.Ed. 1005 (1949) (". . . normally congressional purpose to displace local laws must clearly be manifested"); *accord, Florida Lime & Avocado Growers, Inc. v. Paul, supra; Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc.*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963), *rev'g* 149 Colo. 259, 368 P.2d 970 (1962); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed.1447 (1947); *see generally*, Engdahl, *Preemptive Capability of Federal Power*, 45 U. Colo. L. Rev. 51 (1973).

Plaintiffs suggest only one federal enactment as the basis for their preemption argument: the "Animal Welfare Act of 1970." 7 U.S.C. § 2131 *et seq.* (1970). This federal statute does impose certain licensing requirements upon persons who ship pets for sale in interstate commerce. However, the act clearly does not indicate a preemptive intent. The express intent of the statute is to protect pet owners from "theft of such

pets," and to prevent the sale or inhumane use of such pets for research purposes. 7 U.S.C. § 2131 (1970). It applies exclusively to "persons or organizations engaged in using [pets] for research or experimental purposes or in transporting, buying, or selling them for such use." *Id.* Moreover, the Act expressly endorses state-federal cooperation by authorizing the Secretary of Agriculture to:

". . . *cooperate with the officials of the various states . . . in carrying out the purposes* of this chapter and of any *state, local, or municipal legislation* or ordinance on the same subject." (Emphasis added.)

7 U.S.C. § 2145(b) (1970). Given the different purposes behind the federal statute (preventing pet thievery and inhumane research) and the Colorado regulations (public health), and the clear expressions of Congressional intent to foster cooperation with state interests under the Act, we perceive no Congressional intent to ban remedial state legislation in the field of interstate commerce in pets. *See Reid v. Colorado, supra* (federal Act regulating interstate livestock transportation did not invalidate Colorado statute regulating importation of livestock with communicable diseases where preemptive intent was not "clearly manifested").

Accordingly, the judgment is affirmed.