Charles McGrath Director, Division of Labor 1313 Sherman Street, Room 314 Denver, CO 80203
Dear Mr. McGrath:
This opinion letter is in response to your request for a formal attorney general opinion in which you inquired about the retroactive or prospective application and attendant effects of the Colorado Supreme Court decision in the case ofEngelbrecht v. Hartford Accident Indemnity Co.,680 P.2d 231 (Colo. 1984).
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents the following questions:
1. Is the supreme court decision in Engelbrecht
disallowing deductions in the amount of federal social security disability cost-of-living increases from workers' compensation payments to be given retroactive or prospective application?
 My conclusion is that the Engelbrecht decision should be given complete retroactive application to the claimants in Engelbrecht and other claimants who have preserved their rights on this issue. The decision should be given further retroactive application to the extent that all periodic compensation payments made after the date of judgment in Englebrecht should be recomputed so as to delete all federal social security disability cost-of-living increases which may have been computed onto the claimant's original social security disability award.
2. Does such retroactive or prospective application apply to all cases affected by social security disability offsets, including open cases, closed cases eligible to petition to reopen, closed cases not eligible to petition to reopen, and cases which have been settled?
 My conclusion is that, except for the claimants in Engelbrecht and in cases where rights to review or appeal on this issue have been specifically preserved, the decision applies from the date of judgment to all open cases where reduced periodic compensation benefits are now being paid or would have been paid past that date had not cost-of-living reductions caused the compensation payment to be reduced to zero. Except for such cases, any petition to reopen which is otherwise granted under section 8-53-113, C.R.S. (1983 Supp.) should, in my opinion, be denied with respect to this issue.
3. Is the interest penalty provided in section 8-52-109(2), C.R.S. (1973) applicable to all moneys due as a result of this supreme court decision?
 My conclusion is that the interest penalty provided in section 8-52-109(2), C.R.S. (1973) will accrue from the date of judgment for any moneys due, and from the dates of the respective social security disability cost-of-living offsets for the claimants in Engelbrecht
and cases where rights to review or appeal on this issue have been preserved.
ANALYSIS
The questions presented for analysis and response are triggered by the recent Colorado Supreme Court decision in Engelbrechtv. Hartford Accident Indemnity Co., supra, announced on April 23, 1984.
The opinion notes that both Stanley Dailey and Alvin Engelbrecht were injured in work related accidents and consequently received state workers' compensation benefits as well as federal social security disability benefits. Relying on section 8-51-101(1)(c), C.R.S. (1973), the workers' compensation insurers deducted one-half of the federal social security disability benefits including cost-of-living increases to such benefits. Reversing separate panels of the court of appeals, the supreme court, in a case of first impression, disallowed deductions in the amount of the cost-of-living increases from the workers' compensation payments and remanded the cases to the court of appeals with directions to return them to the Industrial Commission for entry of an appropriate order.
The supreme court's opinion was based exclusively on statutory interpretation and did not note any constitutional deficiency in regard to cost-of-living deductions as such, nor did the opinion discuss the question of retroactive or prospective application.
Parenthetically, the rationale of the Engelbrecht
decision would, in my opinion, apply with full force and effect to any cost-of-living offsets computed in reliance on section 8-50-103, C.R.S. (1983 Supp.), which permits workers' compensation benefits to surviving dependents in fatal cases to be reduced by 100 percent of the federal social security survivors' insurance award.
The decision in Engelbrecht is a case of first impression, but one which in effect overturned a long standing procedure wherein cost-of-living increases were included in the computations calculating the federal social security disability offsets permitted by sections 8-51-101(1)(c), C.R.S. (1973) and 8-50-103, C.R.S. (1983 Supp.). The basic question is whether the supreme court's interpretation should be applied retrospectively or limited to prospective effect. A purely prospective rule would not apply even to the parties in the case where the rule was announced; while on the other hand, a completely retrospective application would govern even in those cases where proceedings are final. People in Interest of C.A.K.,652 P.2d 603, 607 (Colo. 1982). In my opinion an equitable balance must be struck between these two extremes.
In striking this balance you are advised that the full effect of the Engelbrecht decision should be applied to all future periodic compensation benefits paid after the date of judgment or to benefits that would have continued to be paid past that date had not the social security disability offsets reduced the compensation payment to zero. This adjustment of future payments should be computed on the basis of theoriginal social security disability award, andall cost-of-living increases which were applied to the original award, either before or after the judgment date, must be deleted since the Engelbrecht decision clearly "disallows" such offsets. Simple equity as well as the recognized humanitarian purposes of the Workmen's Compensation Act, demand that we give as full effect to the decision as circumstances and relevant factors permit. Hence, future periodic compensation payments now due and payable shallnot be reduced by any social security disability cost-of-living increases which may have been computed onto the original social security disability award.
The claimants in Engelbrecht and other claimants who have specifically preserved their rights with respect to cost-of-living offsets shall be accorded full retroactive relief. However, for reasons hereinafter discussed, it is my opinion that where claimants have not taken timely action to assert or preserve their rights with respect to this issue, they may not now assert belated claims to recoup such offsets which were made prior to the date of the Engelbrecht decision. Even petitions to reopen to recoup prior offsets on grounds of error or mistake in accord with section 8-53-113 (1983 Supp.) may be refused, in the exercise of your discretion, to ensure the fiscal integrity and possibly the very solvency of the entire workers' compensation system, the failure of which would drastically affect all beneficiaries, not only those who seek recoupment.
In Colorado, it is well settled that the court which announces a rule may determine whether it shall be given retroactive or prospective effect. People in Interest of C.A.K.,supra. In Engelbrecht, the supreme court offered no such guidance.
It is emphasized that the cost-of-living offsets were taken in good faith, and with the full knowledge and acquiescence of the claimants over the many years that the procedure had been in effect, until the claimants in Engelbrecht chose to complain. This good faith reliance and acceptance of the social security disability cost-of-living offset procedure was "an operative fact and / had / consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration." Chicot County Drainage District v. BaxterState Bank, 308 U.S. 371, 374 (1940).
Colorado has recognized that an employee-claimant has a duty to mitigate the damages and needs to object and request a hearing where an employer asserts a questionable credit or offset.Hurtado v. C. F. I. Steel Corp., 168 Colo. 37, 449 P.2d 819
(1969). It has been further held that a claimant who fails to attack an award within the time prescribed loses his right to review and the order becomes final, and he is not entitled to require the reviewing authority to exercise a discretionary right to reopen. In this regard, the supreme court pertinently stated:
 Having failed to pursue the statutory procedure for review of a claimed error in law, Cutshall now seeks . . . to obtain the relief he should have sought by way of appeal from the original decision of the Commission, and, in effect, contends that whenever the Commission makes an error or mistake in the law, it must, under penalty of reversal by this Court, reopen a case long since final. Not so.
Industrial Commission v. Cutshall, 164 Colo. 240, 243,433 P.2d 765, 766 (1967); accord Wallace v.Industrial Commission, 629 P.2d 1091 (Colo.App. 1981),cert. denied.
Hence, in my opinion, where claimants have not taken timely action to assert or protect their rights after the employer has claimed the cost-of-living offset, they should not be heard to complain now; this is especially so in cases which have been long closed, settled, compromised, or have otherwise become stale. As the decision in Cutshall noted, the precursor statute relating to reopening was permissive in nature, and did not require reopening in every case where an error, mistake, or change of condition was shown. Id. at 243-244,433 P.2d at 766. Similarly, the current statute permits, but does not require, the director to reopen cases upon his own motion. Section 8-53-113, C.R.S. (1983 Supp.).
Accordingly, you are further advised that in my opinion you may exercise your discretionary right and refuse to reopen any case on this issue even though the time limits set out in section 8-53-113, C.R.S. (1983 Supp.) have not yet expired, except where rights to review or appeal on this precise issue have been preserved.[1] In my opinion such action would not constitute an abuse of discretion since such action would protect and ensure the continued solvency of the entire workers' compensation program.
In deciding matters of this nature, Colorado and the United States Supreme Court have addressed various factors which should be considered in determining whether a new rule or interpretation should be given prospective or retrospective application. The common thread throughout is reliance on and stability in the law, coupled with considerations of equity to avoid injustice or hardship. See People in Interest of C.A.K.,supra; Chevron Oil Co. v. Huson, 404 U.S. 97
(1971).
Recognizing this need for stability and reliance on past practices, the Colorado appeals court held in Van Cleave v.Board of County Commissioners, 33 Colo. App. 227, 518 P.2d 1371
(1973), that where many counties, in good faith reliance upon custom, tradition, and an acknowledged misinterpretation of the law, had been paying housing allowances to sheriffs illegally and without authority, the decision would not be applied retroactively so as to allow the counties to recover the sums erroneously paid. The appeals court in Van Cleave
specifically recognized the "good faith reliance upon custom, tradition, and perhaps a misinterpretation of the law" in regard to past payments, and refused to allow a retroactive application, which might result in a multiplicity of suits seeking recovery for past mispayments which had been made with "widespread reliance placed upon the custom. . . ." Id. at 232,518 P.2d at 1374.
As noted above, the good faith reliance and acceptance of the social security disability cost-of-living offset interpretation is an operative fact and has consequences which cannot justly be ignored. Chicot County Drainage District v. Baxter StateBank, supra, 308 U.S. at 374 (1940). Colorado has specifically recognized that "practical considerations," which include "the protection of persons who have relied on the earlier state of the law" and "the protection of stability in areas where society attaches particular importance to stability," must guide us in determining whether a rule of law should be applied retrospectively. Ground Water Commission v. Shanks,658 P.2d 847, 849 (Colo. 1983) (citing other authority). Here, in Colorado, the employers, the insurers, the Division of Labor, and even the claimants (until Dailey and Engelbrecht complained) in good faith stipulated, compromised, settled, and closed cases for the past 9 or more years, which cases included and accepted, without objection, social security cost-of-living increases as valid setoffs against the claimants' benefits. With such widespread reliance upon the setoff procedure, the good faith disposition of those cases should not be upset by a strict retroactive application of the Engelbrecht decision.
A purely retroactive approach would ignore significant practical considerations which would drastically affect the solvency of both employers and insurers who fund the existing workers' compensation benefits, whose obligations to provide such benefits are of critical importance to all workers and society in general. In this respect the supreme court has stated that:
 In our view, practical considerations require that the declaration of unconstitutionality here be applied prospectively only, in order that stability in the administration of the old-age pension fund not be unduly disturbed or impaired. We deem it important that the General Assembly, which has relied for many years on the ostensible validity of the durational residency requirement of the statute, not be unnecessarily hampered in its fiscal planning and budgeting, a result which most certainly would occur if this ruling were made retrospective.
Jeffrey v. Department of Social Services, 198 Colo. 265,273, 599 P.2d 874, 880 (1979).
Similarly recognizing the serious fiscal and economic consequences that changes in legal rules can have upon insurance and pension funds, the United States Supreme Court pertinently commented while denying retroactive application in a pension fund case that:
 We must recognize that conscientious and intelligent administrators of pension funds . . . may well have assumed that a program like the Department's was entirely lawful. . . . Nor can we ignore the potential impact which changes in rules affecting insurance and pension plans may have on the economy. . . . These plans, like other forms of insurance, depend on the accumulation of large sums to cover contingencies. The amounts set aside are determined by a painstaking assessment of the insurer's likely liability. Risks that the insurer foresees will be included in the calculation of liability, and the rates or contributions charged will reflect that calculation. The occurrence of major unforeseen contingencies, however, jeopardizes the insurer's solvency and, ultimately, the insureds' benefits. Drastic changes in the legal rules governing pension and insurance funds, like other unforeseen events, can have this effect. Consequently, the rules that apply to these funds should not be applied retroactively unless the legislature has plainly commanded that result. . . . Retroactive liability could be devastating for a pension fund. The harm would fall in large part on innocent third parties.
Los Angeles Dept. of Water Power v. Manhart, 435 U.S. 702,720-723 (1978). See also Arizona GoverningCommittee v. Norris, 103 S.Ct. 3492 (1983).
The analogy between the potential insolvency of the pension fund in Manhart and of the insurers [2] who fund the workers' compensation benefits in Colorado is inescapable. These insurers operate in a very competitive and regulated environment, and like those in Manhart, make painstaking calculations annually to determine adequate rates and reserves; calculations which by long-standing custom, acceptance, and reliance on the offset procedure included the increased social security disability cost-of-living offsets in the rate computations. As Manhart and Norris
emphasized, if the insurers were now required to repay these offsets retroactively, they would be forced to meet their remaining obligations with diminished assets and devastating results with respect to solvency. If the reserves proved inadequate, all beneficiaries of the workers' compensation system would be affected, not only those who now seek return of the offsets. If the burden must fall on either those who chose not to timely assert their rights or on innocent third parties, equity demands that such harm should not fall on the innocent. See Los Angeles Dept. of Water andPower v. Manhart, 435 U.S. at 723.
In regard to the issue of whether the interest penalty provided in section 8-52-109(2), C.R.S. (1973) is applicable to all moneys due as a result of the supreme court decision inEngelbrecht, it is my opinion, in consonance with my views related above, that the right to interest accrues from the date of judgment, and with respect to the claimants inEngelbrecht and in cases where rights to review or appeal on this issue have been specifically preserved, such interest payments to those claimants shall accrue from the date the social security disability cost-of-living offsets were first charged against their respective accounts.
SUMMARY
In summary it is my opinion that the supreme court decision inEngelbrecht disallowing deduction in the amount of social security disability cost-of-living increases from workers' compensation payments should be given complete retroactive application to the claimants in Engelbrecht and other claimants who have preserved their rights on the issue. The decision should be given further retroactive application to the extent that all periodic compensation payments made after the date of the judgment in Engelbrecht, including payments that would have been continuing past that date had they not been reduced to zero by the offsets, should be recomputed so as to delete all federal social security disability cost-of-living increases which may have been computed onto the claimant's original social security disability award. Such adjustments on future periodic payments should be made whether the cost-of-living increase was applied to the original award before or after the date of judgment.
Further, payments resulting from such recomputations or adjustments should be paid or otherwise credited to the respective claimant's account, and should include any interest penalty as provided in section 8-52-109(2), C.R.S. (1973), with interest accruing from date of judgment. Payments or credits to claimants in Engelbrecht and to claimants where rights to review or appeal on this issue have been specifically reserved shall include all cost-of-living offsets previously charged against their respective accounts, and should include the interest penalty adjustment from the date such offsets were first charged against the accounts.
Where claimants have not taken timely action to assert or preserve their rights with respect to the cost-of-living offsets, your refusal to reopen cases on this issue would, in my opinion, constitute a proper exercise of your discretion.
Very truly yours,
 DUANE WOODARD Attorney General
DATE, EFFECTIVE SOCIAL SECURITY WORKMEN'S COMPENSATION
Section 8-51-101(1)(c), C.R.S. (1973) Section 8-50-103, C.R.S. (1983 Supp.) Section 8-52-109(2), C.R.S. (1973) Section 8-53-113, C.R.S. (1983 Supp.)
LABOR AND EMPLOYMENT DEPT. Labor, Div. of Industrial Commission ADMINISTRATION, DEPT. OF Hearing Officers Div.
Whether the recent supreme court decision in Engelbrecht v.Hartford Accident Indemnity Co., 680 P.2d 231 (Colo. 1984) disallowing deductions in the amount of the federal social security disability cost-of-living increases from workers' compensation payments shall be given retroactive or prospective application.
[1] There may be cases pending where other claimants have registered objections similar to those in Engelbrecht, but by petition, appeal, motion, stipulation, agreement, or otherwise have requested that the resolution of the issue be held in abeyance until the time a decision in Engelbrecht is announced. In such cases, these claimants should be treated the same as the claimants in Engelbrecht.
[2] Self-insureds are included in this term, since self-insureds are presumed to calculate the potential cost of worker's compensation benefits in the price of their product or services.