Grace **MARINEZ, Personal Representative of the Estate of Natividad F. Marinez, Petitioner,**

v.

The **INDUSTRIAL COMMISSION of the STATE OF COLORADO; Robert Husson, Director, Division of Labor; Drywall Supply, Inc.; and State Compensation Insurance Fund, Respondents.**

No. 86SC327.

Supreme Court of Colorado,
En Banc.

Dec. 7, 1987.

**554**

Green & Josefiak, P.C., Mary M. Josefiak, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondent Indus. Com'n.

William P. Dixon, Denver, for respondent State Compensation Ins. Fund.

Paul Conaway, amicus curiae for Colo. Trial Lawyers Ass'n.

LOHR, Justice.

We granted certiorari to review the unpublished opinion of the Colorado Court of Appeals in *Marinez v. Industrial Commission*, No. 85CA1534 (Colo.App.1986), in order to determine whether our decision in *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo.1984), is to be given retroactive effect. In *Engelbrecht*, we held that cost-of-living increases in federal social security disability benefits are not "periodic disability benefits" within the meaning of section 8–51–101(1)(c), 3B C.R.S. (1986), and therefore do not trigger deductions from state workers' compensation disability benefits. Subsequent to our decision in *Engelbrecht*, the petitioner applied for a hearing before the Department of Labor and Employment (Department), asserting that *Engelbrecht* should be applied retroactively to his case and that it entitled him to reimbursement for moneys previously deducted from his workers' compensation disability benefits based on cost-of-living increases in his federal social security disability benefits. The hearing officer ruled that *Engelbrecht* is to be applied prospectively only—that is, only to benefits payable after the date of that decision. The Industrial Commission of Colorado (Commission) entered an order affirming the hearing officer's decision, and the court of appeals in turn affirmed the order of the Commission.

We agree with the petitioner that our decision in *Engelbrecht* should be applied retroactively. Therefore, we reverse the judgment of the court of appeals.

### I.

On March 19, 1976, the petitioner, Natividad F. Marinez, was involved in an automobile accident while in the course and scope of his employment. As a result of the accident, Marinez was rendered a paraplegic from the waist down. The State Compensation Insurance Fund (State Fund), the employer's workers' compensation insurer, admitted that Marinez was permanently and totally disabled and admitted liability for compensation. Marinez was accordingly awarded state workers' compensation periodic disability benefits payable for the remainder of his life. *See* § 8–51–107, 3B C.R.S. (1986). On September 1, 1976, Marinez also began receiving periodic social security disability benefits. The State Fund immediately began deducting $39.70 per week, constituting one-half of the social security disability payments, from Marinez's workers' compensation disability payments pursuant to section 8–51–101(1)(c), 3B C.R.S. (1986). On June 1, 1977, Marinez received a cost-of-living increase in his social security disability benefits, and the State Fund began deducting one-half of this increase from his workers' compensation disability benefits as well.

On May 1, 1984, approximately one week after we announced our decision in *Engelbrecht*, the State Fund ceased making deductions from Marinez's workers' compensation disability benefits based on the social security cost-of-living increases. Thereafter, on May 18, 1984, Marinez filed an application with the Department requesting a hearing to determine whether he should be reimbursed for the money previously deducted from his workers' compensation disability benefits based on cost-of-living increases in his social security disability benefits. A hearing was held before a hearing officer. The hearing officer concluded that *Engelbrecht* should be applied

prospectively only, and therefore entered an order denying Marinez's request for reimbursement for the social security cost-of-living deductions. The Commission entered an order adopting and affirming the hearing officer's decision on October 16, 1985.

Marinez appealed the Commission's order to the court of appeals. That court affirmed the order, relying on *Rusk v. Industrial Commission*, 716 P.2d 156 (Colo.App. 1985), a case which we had granted certiorari to review and which held that *Engelbrecht* should not be given retroactive application.[1] *Marinez v. Industrial Comm'n*, No. 85CA1534 (Colo.App.1986). Marinez then filed a petition for certiorari with this court. We granted certiorari.

## II.

In *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo.1984), we faced the issue of whether cost-of-living increases in social security disability benefits are themselves "periodic disability benefits" within the meaning of section 8–51–101(1)(c), 3B C.R.S. (1986), and therefore trigger deductions from state workers' compensation permanent disability benefits. Section 8–51–101(1)(c) provides in pertinent part:

> In cases where it is determined that periodic disability benefits granted by the federal old-age, survivors, and disability insurance act are payable to an individual and his dependents, the aggregate benefits payable for temporary total disability, temporary partial disability, permanent partial disability, and permanent total disability pursuant to this section shall be reduced, but not below zero, by an amount equal as nearly as practical to one-half such federal periodic benefits....

We held that to interpret the phrase "periodic disability benefits" in section 8–51–101(1)(c) to include cost-of-living increases in social security disability payments would not be consistent with the purposes of the Workmen's Compensation Act, sections 8–40–101 to 8–54–127, 3B C.R.S. (1986 & 1987 Supp.), "to protect employees who suffer injuries arising out of their employment and to give injured workers a reliable source of compensation." *Engelbrecht*, 680 P.2d at 233. Furthermore, we noted that to allow an injured worker to retain the full cost-of-living increase in federal benefits would not contravene the intent of the General Assembly to prevent double awards, *i.e.*, payment of the full amount of social security and workers' compensation benefits for the same disability. We explained:

> [A] cost-of-living increase [in federal social security disability benefits] does not result in a double award. The federal government has decided that it will maintain the buying power of social security payments, not that it will provide additional benefits for a particular injury. Because Colorado does not provide benefits to keep pace with inflation, there is no double payment.

*Id.* Finally, we noted that "allowing an insurer to deduct one-half the cost-of-living increase each time one occurs, and thus decrease the amount the insurer owes, is not consistent with the goal [of the Workmen's Compensation Act] of determining with certainty the amount owed." *Id.*

Therefore, we held that cost-of-living increases in social security disability benefits may not be deducted from workers' compensation disability benefits pursuant to section 8–51–101(1)(c). However, we did not address whether our holding was to be applied only prospectively—to payments to be made subsequent to the date of our decision—or retroactively as well—to all past payments from which such deductions had been taken. We turn now to the resolution of that issue.

## III.

### A.

■■■ "[T]he federal constitution has no voice upon the subject" of retroactivity,

---

**1.** After we granted certiorari in *Rusk v. Industrial Commission*, 716 P.2d 156 (Colo.App.1985), the parties settled the case and we remanded it to the court of appeals to be returned to the Commission for review of a proposed settlement agreement, pursuant to a stipulation by the parties. Our decision in the present case rejects the nonretroactivity rule adopted by the court of appeals in *Rusk*.

and state courts are therefore free to choose whether to apply new state court rulings retroactively or prospectively. *Great Northern Ry. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932) (rejecting a due process attack upon the solely prospective application of a state court decision in a civil case). The United States Supreme Court reaffirmed its *Sunburst* holding in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), a federal criminal case, stating that "the Constitution neither prohibits nor requires retrospective effect." *Id.* at 629, 85 S.Ct. at 1737. In light of this premise, the court in *Linkletter* outlined a set of factors to be considered by a federal court in deciding whether to apply a new criminal law decision retroactively.[2]

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the United States Supreme Court set forth the standards governing the question of retroactivity in federal civil cases. Under *Chevron*, a court is to consider three separate factors. First, a "decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* at 106, 92 S.Ct. at 355 (citations omitted). Second, the court must " 'weigh the merits and demerits [of retroactive application] in each case by looking to the history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation.' " *Id.* at 106–07, 92 S.Ct. at 355 (quoting *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737–38, 14 L.Ed.2d 601 (1965)). Third, the court must weigh the inequity that would be imposed by retroactive application in order to avoid injustice or hardship. *Id.* 404 U.S. at 107, 92 S.Ct. at 355–56.

In *People in the Interest of C.A.K.*, 652 P.2d 603 (Colo.1982), we looked to *Chevron* for guidance and adopted and applied the standards set forth in that case in determining whether to give retroactive effect to a decision concerning the quantum of proof to be required in cases involving termination of parental rights. We therefore must apply the *Chevron* standards to resolve the retroactivity question in the case now before us.

The United States Supreme Court in *Chevron* provided no specific guidance regarding the interrelationship of the three factors by which a retroactivity issue is to be resolved. Instead, the Court analyzed each factor separately and concluded that each favored a prospective application of the rule at issue in that case. *Chevron*, 404 U.S. at 106–09, 92 S.Ct. at 355–57.[3]

In *People in the Interest of C.A.K.*, we determined that the *Chevron* factors should be applied in the following manner:

> First, the decision, if it is not to be applied retroactively, must establish a new rule of law. Second, the merits of each case must be weighed by looking to the purpose and effect of the rule in question and whether retrospective operation will further or retard its operation. Third,

**2.** The Court described the factors to be considered as follows:

> [W]e must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.

*Linkletter*, 381 U.S. at 629, 85 S.Ct. at 1738.

**3.** Lacking definitive guidance from the United States Supreme Court, the lower federal courts have developed at least three different methods of applying the *Chevron* factors. *See* Note, *Confusion in Federal Courts: Application of the Chevron Test in Retroactive-Prospective Decisions*, 1985 U.Ill.L.Rev. 117, 132–38 (1985). The three methods are the threshold method, the balancing method, and the comprehensive method. Under the threshold method, a retroactive-prospective question exists only when a court announces an unforeseeable new rule. If the court determines that a new rule was announced, then it must balance the second and third factors. If the court concludes that the rule in question is not new, the rule is to be applied retroactively without further inquiry. The balancing method, as its name implies, requires a balancing of the three factors, and involves a subissue of the weight to be given to each. Finally, the comprehensive method requires all three *Chevron* factors to favor nonretroactivity before a new rule may be given only prospective application. *Id.* at 133–36.

the inequity imposed by retroactive application must be weighed to avoid injustice or hardship.

*People in the Interest of C.A.K.,* 652 P.2d at 607. *Accord Ground Water Comm'n v. Shanks,* 658 P.2d 847, 849 (Colo.1983). In *People in the Interest of C.A.K.,* we determined that a new rule of law had been established in *People in the Interest of A.M.D.,* 648 P.2d 625 (Colo.1982), mandating a clear and convincing evidence standard in proceedings involving termination of parental rights in place of the preponderance of the evidence standard which had been applied in previous cases. We also concluded that the new standard would directly influence the basic reliability of the fact-finding decision and therefore that retrospective operation would further the purpose of the rule. We decided, however, that grave inequity and hardship would result from retroactive application of the new burden of proof in that finality of decisions involving termination of parental rights is of central importance to the promotion of family stability. We concluded that the interest in not disrupting decisions on the basis of which children's placements and family relationships have been predicated outweighed the considerations favoring retroactive application of the newly-adopted standard of proof.

*People in the Interest of C.A.K.* established that the question of retroactivity arises only when a decision establishes a new rule of law.[4] When that condition has been met, the factors favoring and disfa-

voring retroactive application are to be weighed in the balance. All do not necessarily have equal weight but are to be evaluated on the basis of the strength of the equitable and policy considerations underlying each. We follow this approach in resolving the retroactivity issue in the case now before us.

### B.

#### 1.

We begin with the first part of the *Chevron* test, whether our decision in *Engelbrecht* established a new principle of law. As we noted in *Engelbrecht,* cost-of-living increases to social security benefits were first authorized by Congress in 1972 and were first paid in 1975. *Engelbrecht,* 680 P.2d at 232 n. 1. Until we decided *Engelbrecht* we had never had occasion to consider whether such increases were "periodic disability benefits" within the meaning of section 8–51–101(1)(c). Nor had the issue come before the Colorado Court of Appeals prior to its decisions that were the subject of our review in *Engelbrecht.*[5]

The statute itself does not explicitly resolve the question decided in *Engelbrecht.* Pending definitive judicial interpretation, it was necessary that insurers obligated for periodic disability payments under section 8–51–101(1)(c) act based upon their own considered understanding of the statute's requirements. As the parties agree, the prevalent if not uniform practice of such

---

4. As Justice Stewart, the author of the *Chevron* opinion, has stated:

   An issue of the "retroactivity" of a decision of this Court is not even presented unless the decision in question marks a sharp break in the web of the law. The issue is presented only when the decision overrules clear past precedent or disrupts a practice widely relied upon.

   *Milton v. Wainwright,* 407 U.S. 371, 381–82 n. 2, 92 S.Ct. 2174, 2180, 33 L.Ed.2d 1 (1972) (Stewart, J., dissenting) (citations omitted). This approach, the threshold approach, logically flows from the language of *Chevron* and places the decision in its proper historical perspective. Courts developed prospectivity to ease the burden of an unexpected change of law on those who had relied on the old rule. Note, *Confusion in Federal Courts: Application of the Chevron Test in Retroactive-Prospective Decisions,*

1985 U.Ill.L.Rev. 117, 137 (1985). A decision that establishes no new legal principle raises no reliance concerns and consequently does not require any further retroactivity analysis. Only when a decision represents a clear rejection of past precedent or practice is an analysis comprehending the second and third *Chevron* factors warranted.

5. In *Engelbrecht,* we reviewed two decisions of the court of appeals, *Dailey v. Industrial Commission,* 651 P.2d 1223 (Colo.App.1982), and *Engelbrecht v. Hartford Accident & Indemnity Co.,* 652 P.2d 1105 (Colo.App.1982). In holding that cost-of-living increases in federal social security disability benefits are not "periodic disability benefits" within the meaning of § 8–51–101(1)(c), we reversed the judgment of the court of appeals in each of those cases.

insurers was to treat cost-of-living increases to social security disability benefits as "periodic disability benefits" and therefore to deduct one-half of such increases from workers' compensation disability benefit payments. In *Engelbrecht,* we rejected the statutory interpretation upon which that practice was based and determined that such deductions were improper. *Engelbrecht* did not overrule past precedent.[6] However, *Engelbrecht* did construe for the first time a statute that was not explicit in its application to cost-of-living increases in social security disability payments, and our construction was contrary to the one that insurers had applied to govern the computation of periodic disability payments under section 8–51–101(1)(c). It cannot be said that the statute is so plain that the construction adopted in *Engelbrecht* was "clearly foreshadowed," *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355, even though conversely there also was little in the statutory language to foster confidence in the interpretation upon which the insurers had acted. Under these circumstances, we believe that *Engelbrecht* did decide an issue of first impression whose resolution was not clearly foreshadowed, and therefore established "a new principle of law" as that term was used by the United States Supreme Court in enunciating the first of the three factors governing retroactivity in *Chevron.*

### 2.

The establishment of a new principle of law, however, is only the threshold factor in the *Chevron* analysis. We next examine the merits and demerits of retroactive application of the *Engelbrecht* decision by looking to the history of cost-of-living adjustments, the purpose and effect of our rule in *Engelbrecht,* and whether retroactive operation of *Engelbrecht* will further or retard the operation of that rule.

As earlier noted, Congress provided for cost-of-living increases to social security benefits in 1972, presumably to maintain the purchasing power of those payments in an inflationary economy. *See Engelbrecht,* 680 P.2d at 232 n. 1. Colorado, however, provided no comparable escalation of benefits for cost-of-living increases in its Workmen's Compensation Act, and we upheld such omission against due process and equal protection challenges in *Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982).

■ Among the purposes of the Workmen's Compensation Act are the protection of employees who suffer injuries arising out of their employment and the provision of a reliable source of compensation to those injured workers. *Engelbrecht,* 680 P.2d at 233; *Bellendir v. Kezer,* 648 P.2d at 647. Recognizing these dual purposes, we have concluded that social security cost-of-living increases may not be deducted from workers' compensation benefits. *Engelbrecht,* 680 P.2d at 233. Allowing an injured worker to keep his federal cost-of-living increases better protects him and provides him a more reliable source of income, especially in light of the fact that Colorado does not provide its own cost-of-living increases to periodic disability payments to keep pace with inflation. *Id.* The cost-of-living increases simply preserve the purchasing power of the federal social security disability benefits. The clear purpose of section 8–51–101(1)(c), as construed in *Engelbrecht,* therefore, was to afford better financial protection to injured workers in Colorado. The effect of *Engelbrecht* was to rectify a longstanding misinterpretation of section 8–51–101(1)(c) by insurers that had served to detract from the statute's purpose.

Retroactive application of *Engelbrecht* would further both its purpose and its effect. Before *Engelbrecht,* those workers, including the petitioner, whose workers' compensation disability benefits were decreased because of cost-of-living increases in federal benefits effectively received only one-half of the cost-of-living increase deemed necessary by Congress to permit social security periodic disability payments to keep pace with inflation. Not only did

---

**6.** The court of appeals judgments that were reversed in *Engelbrecht* were not final in that they were under review by certiorari. Therefore, the reversal of those judgments did not constitute the overruling of prior precedent.

Colorado not provide for cost-of-living increases of its own, but it in effect deprived the injured worker of one-half of the increase provided under federal law. Applying *Engelbrecht* retroactively would redress that inequity and would accord to the affected injured workers the full intended benefit of past cost-of-living increases to social security disability payments. Granting workers the full benefit of the cost-of-living increases would more nearly stabilize the purchasing power of the payments and thereby promote the statutory purposes of protection of injured employees and provision of a reliable source of income, without resulting in double payments for the same injury.

■ The State Fund contends, however, that a retroactive application of *Engelbrecht* would undermine the planning upon which the success of the state compensation scheme rests and would jeopardize the financial stability of the insurance system. This in turn would threaten the very source of the payments that now protect injured workers and assure them a reliable source of income. Therefore, argues the State Fund, the purpose of *Engelbrecht* would be retarded by retroactive application of that case.

The State Fund, however, offered no evidence to support its argument that retroactive application of *Engelbrecht* would jeopardize the financial stability of the insurance system. We have no basis, therefore, to evaluate the extent of the obligations that would result from a retroactive application of *Engelbrecht* or the adequacy of the reserves of insurers to meet such obligations. It is the State Fund's burden to prove its assertion that financial stability of the insurance system is at stake. *See Jimenez v. Weinberger*, 523 F.2d 689, 704 (7th Cir.1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976); *Hurvich v. Califano*, 457 F.Supp. 760, 764 (N.D.Cal.1978). No such proof was proffered. In these circumstances we decline to give weight to the State Fund's important but undocumented assertions concerning the ability of insurers to satisfy the financial obligations that would result from applying *Engelbrecht* retroactively. *See*

*Cash v. Califano*, 621 F.2d 626, 632 (4th Cir.1980); *Jimenez*, 523 F.2d at 704; *Hurvich*, 457 F.Supp. at 764.

3.

■ We turn now to the third factor in *Chevron*, whether inequity, resulting in injustice or hardship, would follow from the retroactive application of *Engelbrecht*. From the perspective of injured workers, of course, quite the contrary is the case. Until our decision in *Engelbrecht* workers were wrongfully deprived of a portion of their just benefits because of an erroneous interpretation of the law by insurers. Requiring the wrongfully withheld amounts to be paid to injured workers would do no more than make them whole.

We recognize, however, as the State Fund contends, that the insurance industry and state compensation system have relied on their interpretation of section 8–51–101(1)(c) since cost-of-living increases to federal social security disability benefits were instituted. We also recognize that practical considerations must be evaluated when determining whether to apply a decision retroactively. *Ground Water Comm'n v. Shanks*, 658 P.2d 847, 849 (Colo.1983); *People in the Interest of C.A.K.*, 652 P.2d at 607–09. One of these considerations is the protection of persons who have relied on the earlier state of the law. *Shanks*, 658 P.2d at 849; *People in the Interest of C.A.K.*, 652 P.2d at 608. The State Fund contends that because it relied on its interpretation of section 8–51–101(1)(c) it would be harmed by a retroactive application of *Engelbrecht*.

■ Once again, however, the record is insufficient to address the State Fund's contentions. The record contains no information regarding the number of workers who would be affected by a retroactive application, the amount of money to be paid, the size of reserves out of which payments would be paid, the degree to which insurers have relied on cost-of-living deductions, or the administrative burden of reprocessing applications. It is the State Fund's burden to prove its contention that serious adverse consequences to insurers would result from retroactive application of *Engelbrecht*. *See Jimenez*, 523 F.2d at

**560**

704; *Hurvich,* 457 F.Supp. at 764. Absent such proof, we cannot give credence to the State Fund's assertions. *See Cash,* 621 F.2d at 632; *Jimenez,* 523 F.2d at 704; *Hurvich,* 457 F.Supp. at 764.[7]

**4.**

In summary, we conclude that *Engelbrecht* established a new principle of law by resolving as a matter of first impression that under section 8–51–101(1)(c) workers' compensation carriers may not deduct cost-of-living increases in social security disability benefits from state periodic disability payments. We further conclude that the purpose and effect of the *Engelbrecht* rule will be furthered by a retroactive application. No showing has been made that a retroactive application would impose inequities on insurance carriers or would jeopardize the financial stability of the workers' compensation scheme. Therefore, we hold that *Engelbrecht* should be applied retroactively to the petitioner's claim.

The judgment of the court of appeals is reversed and the case is remanded to that court to be returned to the Commission for further proceedings consistent with the views expressed in this opinion.[8]

Justice MULLARKEY does not participate.

---

**7.** In *Jeffrey v. Colorado State Department of Social Services,* 198 Colo. 265, 599 P.2d 874 (1979), practical considerations led us to conclude that a new rule should not be applied retroactively. In *Jeffrey,* we held unconstitutional a part of Colorado's old age pension statute. We concluded that retroactive application should be denied "in order that stability in the administration of the old-age pension fund not be disturbed or impaired," *id.* at 273–74, 599 P.2d at 880, and deemed it important "that the General Assembly, which has relied for many years on the ostensible validity of [the invalidated statutory provision] not be unnecessarily hampered in its fiscal planning and budgeting, a result which most certainly would occur if this ruling were made retrospective." *Id.* at 274, 599 P.2d at 880. As previously noted, the case now before us presents neither a solid basis for reliance upon the statutory interpretation adopted by the insurers nor information from which we could conclude that the financial impact of retroactive application of *Engelbrecht* would jeopardize the fiscal integrity of the workers' compensation insurance carriers.

**8.** The court of appeals directed the Commission on remand to consider the petitioner's request to amend his average weekly wage and contest the wage admitted by respondents. *Marinez v. Industrial Comm'n,* No. 85CA1534, slip op. at 2 (Colo.App.1986). Our grant of certiorari did not include this issue. The Commission must comply with the court of appeals' directive on this subject when the case is returned to the Commission for further proceedings.