**LOFFLAND BROTHERS COMPANY and National Union Fire Insurance Company, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS PANEL OF the STATE OF COLORADO; Director, Division of Labor, Department of Labor and Employment, State of Colorado; and Kriss Burwell, Respondents.**

No. 88SC154.

Supreme Court of Colorado,
En Banc.

March 13, 1989.

Rehearing Denied April 10, 1989.

**1222**

Blackman & Levine, Lawrence D. Blackman, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, Asst. Atty. Gen., Denver, for respondents Indus. Claim Appeals Panel and Director of the Div. of Labor.

Withers, Seidman & Rice, P.C., Christopher Seidman, Grand Junction, for respondent Kriss Burwell.

Paul Tochtrop, Denver, for amicus curiae Colorado Defense Lawyers Ass'n.

LOHR, Justice.

We granted certiorari to review the opinion of the Colorado Court of Appeals in *Loffland Brothers Co. v. Industrial Claim Appeals Office*, 754 P.2d 768 (Colo. App.1988), to determine whether our decision in *Padilla v. Industrial Commission*, 696 P.2d 273 (Colo.1985), is to be given retroactive effect. In *Padilla*, we held that the Director of the Division of Labor had the statutory authority to reopen any workers' compensation claims, whether previously resolved by adjudicatory proceedings or by settlement agreements, and that no private agreement between the parties could abrogate the Director's reopening authority. Subsequent to our decision in *Padilla*, the respondent, Kriss Burwell, petitioned the Director to reopen his workers' compensation claim on the ground that his physical condition had worsened. In his settlement agreement, entered into prior to our decision in *Padilla*, Burwell waived "his right to re-open his case for any benefits whatsoever excepting medical benefits" provided for in the agreement. Despite this waiver, the hearing officer allowed the reopening of Burwell's claim "[i]n accordance with the holding in *Padilla*."

The Industrial Claim Appeals Panel affirmed the hearing officer's decision and held that no question of a retroactive application of *Padilla* was raised since Burwell's petition to reopen was filed after our decision in *Padilla*. On appeal, the court of appeals concluded that the retroactivity of *Padilla* was at issue since the settlement agreement whereby Burwell purportedly waived his right to reopen his claim was entered into prior to our decision in *Padilla*. The court of appeals nevertheless concluded that *Padilla* was to be applied retroactively, and it affirmed the order of the Industrial Claim Appeals Panel. We also conclude that our decision in *Padilla* should be applied retroactively, but for somewhat different reasons than relied on by the court of appeals. Accordingly, we now affirm the judgment of the court of appeals.

I.

Kriss Burwell suffered severe high voltage electrical burns to his legs and upper body while employed as a worker on an oil drilling rig with the Loffland Brothers Company, a drilling contractor, on June 7, 1981. As a result of this incident, Burwell's right leg was amputated below the knee. Several additional surgical operations were required to reconstruct his left leg and to accomplish skin grafts necessitated by the burn injuries.

After his accident, Burwell received temporary total disability benefits of $244.65 per week from his employer's insurer, National Union Fire Insurance Company. Burwell also received medical and vocational rehabilitation benefits from the Colorado Major Medical Insurance Fund beginning in 1982 and continuing into 1984.

During the summer of 1984, Burwell thought his medical condition had stabi-

lized. On June 25, 1984, Burwell entered into a stipulation for settlement of his workers' compensation and vocational rehabilitation benefits claims. This stipulation was approved by the Director of the Division of Labor on August 13, 1984. Under the terms of the stipulated agreement, Burwell received a lump sum payment of $37,-500 from his employer's insurer in exchange for waiving his claim to any additional past or future temporary partial, temporary total, permanent partial, or permanent total disability benefits. Burwell also received $4,000 from the Colorado Major Medical Insurance Fund in return for waiving his right to vocational rehabilitation and rehabilitation maintenance benefits. As part of the agreement, Burwell also waived "his right to re-open his case for any benefits whatsoever excepting medical benefits as provided" in the agreement.

On February 11, 1985, we announced our decision in *Padilla v. Industrial Commission*, 696 P.2d 273 (Colo.1985). In *Padilla*, we concluded that a settlement agreement purporting to be a "full and final" settlement of any and all workers' compensation claims and which "preclud[ed] forever any further additional claims" arising out of the industrial accident at issue was still subject to the Director of the Division of Labor's statutory authority to reopen a case within the time limits of section 8–53–119, 3 C.R.S. (1973).[1] 696 P.2d at 275, 276, 279–80.

On February 7, 1986, Burwell petitioned the Director to reopen his claim pursuant to section 8–53–113, 3 C.R.S. (1973 & 1984 Supp.),[2] claiming that his physical condition had worsened. A hearing on Burwell's petition was held on July 17, 1986. The hearing officer found that Burwell's physical condition had worsened since the approval of the stipulated agreement on August 13, 1984. Burwell's worsened condition included acute foliculosis on the stump of his right leg, additional scar tissue which had to be surgically removed, progressive atrophy of the right leg which made it difficult to fit a prosthesis, worsening osteomyelitis of the left ankle, and a hammer toe condition caused by the contraction of the tendons in his left toes. The hearing officer concluded that because of his worsened condition, Burwell satisfied the statutory requirements for reopening his case under section 8–53–113. Additionally, the hearing officer concluded that the provisions of Burwell's stipulated agreement waiving additional claims and the right to reopen his case were not effective, in accordance with our holding in *Padilla*. Burwell was awarded additional temporary total disability benefits of $244.65 per week from August 13, 1984, until terminated in accordance with Part IX of the Industrial Com-

---

1. The statutory reopening provisions applicable in *Padilla* have since been amended several times and are now codified at § 8–53–113, 3B C.R.S. (1988 Supp.).

2. At the time Burwell entered into his settlement agreement, the statutory reopening provision, § 8–53–113, provided:

   At any time within six years from the date of injury or at any time within two years after the date the last compensation becomes due and payable, whichever is longer, the director or a hearing officer may, after notice to all parties, review and reopen any award on the ground of an error, a mistake, or a change in condition. If an award is reopened, compensation and medical benefits previously ordered may be ended, diminished, maintained, or increased. No such reopening shall affect the earlier award as to moneys already paid. Any order entered under this section shall be subject to review in the same manner as other orders.

§ 8–53–113, 3 C.R.S. (1973 & 1984 Supp.); Ch. 58, sec. 5, § 8–53–113, 1984 Colo.Sess.Laws 308, 310.

The reopening provisions were again amended after our decision in *Padilla* to provide that the Director's authority to reopen would not apply to "those settlements entered into pursuant to section 8–53–105 in which the claimant waived his right to reopen an award; but a settlement may be reopened at any time on the ground of fraud or mutual mistake of material fact." § 8–53–113, 3B C.R.S. (1986); Ch. 77, sec. 3, § 8–53–113, 1985 Colo.Sess.Laws 355, 356. By their own terms, these amendments to the reopening provisions apply only to settlements entered into on or after the effective date of the amendments, April 5, 1985. Ch. 77, sec. 4, 1985 Colo.Sess.Laws at 356. Because Burwell entered into his settlement agreement on June 24, 1984, and it was approved by the Director on August 13, 1984, the 1985 amendments to the reopening provisions do not apply to this case and are not at issue here.

mission Rules, 7 C.C.R. 1101–3, at 17–18 (1987). This compensation was to be offset by the amounts already awarded Burwell under the stipulated agreement.

The Loffland Brothers Company and National Union Fire Insurance Company appealed this order to the Industrial Claim Appeals Panel, arguing in part that *Padilla* should not be applied retroactively to permit a reopening of Burwell's claim. The appeals panel did not rule on the retroactive application of *Padilla*, concluding that no issue of retroactivity was presented. It reasoned that Burwell had filed his petition to reopen in February 1986, subsequent to our decision in *Padilla*, and that *Padilla* was the controlling law at that time for settlements executed before April 5, 1985. The appeals panel therefore affirmed the hearing officer's order.

The employer and its insurer then sought review of the panel's decision by the Colorado Court of Appeals. The court of appeals concluded that the retroactivity of *Padilla* was the principal issue governing whether Burwell's petition to reopen had been properly granted. *Loffland*, 754 P.2d at 768–69. The court of appeals noted that the key date for the retroactivity issue was not the date when the petition to reopen was filed, but rather the date when Burwell purportedly waived his right to have his case reopened. *Id.* at 769. Because this latter date was prior to our decision in *Padilla*, the question of whether Burwell's agreement effectively precluded a reopening of his claim did raise the issue of the retroactive application of *Padilla*. *Id.*

The court of appeals then considered the factors we used in *Marinez v. Industrial Commission*, 746 P.2d 552 (Colo.1987), for determining whether a decision should be given retroactive effect. Utilizing these factors, the court of appeals concluded that our decision in *Padilla* should be given retroactive effect. Therefore, it affirmed the order of the Industrial Claim Appeals Panel allowing the reopening of Burwell's claim. *Loffland*, 754 P.2d at 770. Loffland Brothers Company and National Union Fire Insurance Company petitioned for certiorari. We granted that petition in or-

der to review the determination of the court of appeals that *Padilla v. Industrial Commission*, 696 P.2d 273 (Colo.1985), should be given retroactive application.

II.

The petitioners argue that under our decision in *Marinez v. Industrial Commission*, 746 P.2d 552 (Colo.1987), *Padilla* should not be applied retroactively to settlement agreements entered into prior to the date *Padilla* was decided. In *Marinez*, we gave retroactive effect to our decision in *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo.1984), which held that cost-of-living increases in federal social security disability benefits are not "periodic disability benefits" and therefore do not trigger deductions from state workers' compensation periodic disability benefit payments under section 8–51–101(1)(c), 3B C.R.S. (1986).

To reach our holding in *Marinez*, we considered the factors for determining whether to give retroactive effect to a civil decision that we adopted in *People in the Interest of C.A.K.*, 652 P.2d 603 (Colo. 1982). These factors were originally developed by the United States Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). We have described the *Chevron* factors and the manner in which they are to be applied as follows:

> First, the decision, if it is not to be applied retroactively, must establish a new rule of law. Second, the merits of each case must be weighed by looking to the purpose and effect of the rule in question and whether retrospective operation will further or retard its operation. Third, the inequity imposed by retroactive application must be weighed to avoid injustice or hardship.

*Marinez v. Industrial Commission*, 746 P.2d at 556–57 (quoting *People in the Interest of C.A.K.*, 652 P.2d at 607).

We noted in *Marinez* that "the question of retroactivity arises only when a decision establishes a new rule of law." 746 P.2d at 557. When a decision does not establish a new rule of law, it is given the

retroactive effect traditionally accorded to all judicial decisions and any analysis of the second and third *Chevron* factors is unnecessary. *See Marinez,* 746 P.2d at 557 n. 4. Applying these principles to the present case, we conclude that *Padilla* did not establish a new rule of law and therefore we affirm the judgment of the court of appeals.

### A.

The court of appeals assumed, for purposes of its analysis, that *Padilla* established a new rule of law. 754 P.2d at 769. Therefore, the court of appeals analysis focused on the second and third *Chevron* factors. However, because an issue of retroactivity does not arise unless a decision establishes a new rule of law, we shall begin by analyzing the first *Chevron* factor to determine if this threshold standard for nonretroactive application has been met. *See Marinez,* 746 P.2d at 557 & n. 4. In order to apply only prospectively, as the petitioners urge us to apply *Padilla,* a decision "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355 (citations omitted). To determine if *Padilla* established a new principle of law, we must first examine the nature of and basis for our holding in *Padilla.*

In *Padilla,* we examined whether the reopening provisions of the Workmen's Compensation Act of Colorado, articles 40 to 54, title 8, 3B C.R.S. (1986 & 1988 Supp.), were applicable to claims resolved by settlement agreements or only to those claims resolved by adjudicatory proceedings before a hearing officer of the Division of Labor. We noted the following features of the act and our prior decisions in concluding that the reopening provisions applied to both settlement agreements and adjudicatory awards. First, the provisions of the act are to be construed liberally in favor of the rights of injured workers. *Padilla,* 696 P.2d at 277. Next, we noted that section 8–53–119, 3 C.R.S. (1973), vested the Director of the Division of Labor "with discretion to reopen a case on the Director's own motion on the grounds specified and within the time limitations provided." *Id.* The discretion to reopen cases is vested only in the Director, and not in any of the parties. *See id.* (citing *Service Supply Co. v. Vallejos,* 169 Colo. 14, 452 P.2d 387 (1969); *Colorado Fuel & Iron Corp. v. Industrial Commission,* 151 Colo. 18, 379 P.2d 153 (1962)). We concluded that the reopening authority vested in the Director was indicative of a "strong legislative policy" that the goal of achieving a just result overrides the interest of litigants in accomplishing a final resolution of their dispute in workers' compensation cases. 696 P.2d at 278.

Next, we observed that no great significance could be attributed to the terms "compensation" and "award" as used in section 8–53–119 to demonstrate an intent to limit the Director's authority to reopen only adjudicatory awards and not settlement agreements. We noted, for instance, that various provisions of the workers' compensation act used the terms "compensation" and "benefits" interchangeably. Additionally, we had previously held that the Director possessed the authority to review the proceedings resulting in compensation whether these proceedings culminated in an " 'order,' 'decision,' 'judgment' or 'finding and award.' " 696 P.2d at 278 (quoting *Brofman v. Industrial Commission,* 117 Colo. 248, 253, 186 P.2d 584, 587 (1947)). Thus, we concluded, "[i]t would at best be a strained reading of section 8–53–119 to suggest that by using the term 'award' the General Assembly had prohibited the Director from reopening any case closed by the entry of an order denying claims for benefits, expenses or compensation." 696 P.2d at 278–79. Instead, the Director's reopening authority extended to "all cases terminated by final agency action," including the approval of a stipulated agreement, consistent with the overall beneficent purposes of the act. *Id.* at 279.

Finally, we reached the "inescapable" conclusion that the Director had authority to reopen all cases within the requisite time limits of section 8–53–119 without regard

to the manner in which any case was resolved. We stated that

> [a]lthough the Workmen's Compensation Act contains no express recognition that cases in which claims are resolved by settlement are to be treated in the same manner as cases which are resolved by awards for purposes of the reopening provisions, *several prior decisions of this court suggest that such conclusion must be implied* from the policy and structure of the Act.

*Padilla,* 696 P.2d at 279 (emphasis added). Key among these prior decisions were those recognizing that generally "the settlement of a claim is equivalent to an award." *Id.* (citing *Harlan v. Industrial Commission,* 167 Colo. 413, 447 P.2d 1009 (1968); *Colorado Fuel & Iron Corp. v. Industrial Commission,* 151 Colo. 18, 379 P.2d 153 (1962); *Brofman v. Industrial Commission,* 117 Colo. 248, 186 P.2d 584 (1947); *Independence Coffee & Spice Co. v. Taylor,* 97 Colo. 242, 48 P.2d 798 (1935); *London Guarantee & Accident Co. v. Sauer,* 92 Colo. 565, 22 P.2d 624 (1933)). Also, we had previously held in *University of Denver v. Industrial Commission,* 138 Colo. 505, 335 P.2d 292 (1959), that, in the context of workers' compensation agreements, "parties cannot by private contract abrogate statutory requirements or conditions affecting the public policy of the state." *Id.* at 509, 335 P.2d at 294.[3] Therefore, based upon the purposes, structure, and language of the workers' compensation statutes, as set forth in the statutes themselves and in our decisions applying those statutes, we ultimately concluded in *Padilla* that the authority of the Director to reopen claims extends to cases resolved by settlement agreements as well as to cases resolved by administrative determinations; and to the extent a settlement agreement purports to abrogate that authority, it is unenforceable. *Padilla,* 696 P.2d at 279–81.

**B.**

Given the foundation and basis for our decision in *Padilla,* as described above, we now examine whether that decision established a new principle of law. The first inquiry is whether *Padilla* "overrul[ed] clear past precedent on which litigants may have relied." *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. Prior to *Padilla,* we had not directly ruled on whether the Director's authority to reopen workers' compensation claims extended to claims based on settlement agreements. To the extent litigants may have relied on past precedents, our decision in *Padilla* was consistent with the precedents holding that the workers' compensation laws were to be liberally construed, that settlement of a claim is equivalent to an award, and that parties cannot by private agreement abrogate statutory requirements or important public policy considerations expressed in the statutes. Thus, *Padilla* did not overrule, either expressly or by implication, any past precedents on which litigants may have relied.

Next, we must determine whether *Padilla* established a new principle of law "by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. As noted above, *Padilla* did decide an issue of first impression. Therefore, the focus of our inquiry is whether the resolution reached in *Padilla* was "clearly foreshadowed" by the statute and our prior decisions.

The petitioners urge us to reach the same result as in *Marinez,* where we held that *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231 (Colo.1984), established a new principle of law since the workers' compensation statute itself did not explicitly resolve the issue decided in *Engelbrecht. See Marinez,* 746 P.2d at 557. The petitioners argue that since the statute here does not explicitly resolve the issue of the Director's authority to reopen claims resolved by settlement agreements,

---

**3.** We also observed that other jurisdictions, relying on their own statutes and adopting various rationales, had concluded that settled workers' compensation claims could be reopened based on changed circumstances, although there was some authority to the contrary. *Padilla,* 696 P.2d at 280.

and since the petitioners had to rely on their understanding of the statute, then *Padilla* necessarily decided an issue whose resolution was not clearly foreshadowed. We disagree. We believe that differences exist between the situation presented in *Marinez* and the instant case such that we need not reach the same conclusion on this issue as we did in *Marinez*.

In *Marinez*, we noted that *Engelbrecht* decided an issue of first impression contrary to the interpretation relied on by insurers to compute periodic disability benefits under section 8–51–101(1)(c), 3B C.R.S. (1986). We held in *Engelbrecht* that federal social security disability benefit cost-of-living increases were not "periodic disability benefits" and therefore did not require corresponding reductions in state workers' compensation benefits under section 8–51–101(1)(c). A review of our opinion in *Engelbrecht* discloses that our decision there was based exclusively on general statutory interpretation principles and previous decisions discussing the general purposes of the workers' compensation laws. Thus, in the *Marinez/Engelbrecht* context there were no prior precedents to provide guidance to the insurers regarding the status to be given cost-of-living increases or what types of benefits would be excluded from section 8–51–101(1)(c).

By contrast, our opinion in *Padilla* was squarely based on prior precedents concerning the interpretation of the workers' compensation laws, the authority of the Director to review previously resolved claims, the nature of settlement agreements, and the effect of private agreements on statutory provisions and public policy choices. The strength of these prior precedents, together with the language and policy of the workers' compensation act, formed the basis of the "inescapable conclusion" reached in *Padilla*. Specifically, in *Padilla* we relied on our prior decisions holding that the Director, and not the parties, had the discretion to reopen claims,[4] that the choice of interchangeable terms such as "compensation" and "benefits" and such as "order," "decision," "judgment," and "finding and award" used in different provisions of the act was not dispositive of the authority granted therein,[5] that the settlement of a claim is equivalent to an award,[6] and that private agreements between the parties cannot abrogate the statutory provisions and strong public policy of the workers' compensation laws.[7] Moreover, our prior opinions establish that a "final" award in the context of a workers' compensation claim means only that the matter has been concluded unless reopened.[8] In light of the many relevant precedents relied on in *Padilla*, taken together with the policy and language[9] of

**4.** *Service Supply Co. v. Vallejos*, 169 Colo. 14, 452 P.2d 387 (1969); *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1962).

**5.** *Brofman v. Industrial Commission*, 117 Colo. 248, 186 P.2d 584 (1947).

**6.** *Harlan v. Industrial Commission*, 167 Colo. 413, 447 P.2d 1009 (1968); *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1962); *Brofman v. Industrial Commission*, 117 Colo. 248, 186 P.2d 584 (1947); *Independence Coffee & Spice Co. v. Taylor*, 97 Colo. 242, 48 P.2d 798 (1935); *London Guarantee & Accident Co. v. Sauer*, 92 Colo. 565, 22 P.2d 624 (1933).

**7.** *University of Denver v. Industrial Commission*, 138 Colo. 505, 335 P.2d 292 (1959).

**8.** *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1962); *Graden Coal Co. v. Yturralde*, 137 Colo. 527, 328 P.2d 105 (1958).

**9.** Section 8–53–113 vests the authority in the Director (or a hearing officer) to review and reopen any workers' compensation award. Because this authority is vested in the Director, *see Service Supply Co.*, 169 Colo. 14, 452 P.2d 387 (1969), it is difficult to see how the petitioners could have relied on Burwell's waiver of "*his right* to reopen his case" to waive the *Director's* authority to review and reopen any case. (Emphasis added). This reliance appears especially misplaced in light of our prior holding that "parties cannot by private contract abrogate statutory requirements or conditions affecting the public policy" of the workers' compensation laws. *University of Denver*, 138 Colo. at 509, 335 P.2d at 294. Instead of being forced to rely on their interpretation of an unclear statute, it seems instead that the petitioners simply misconstrued both the clear terms of the statute and the pre-*Padilla* decisions holding that reopening authority was vested in the Director.

the workers' compensation laws, we conclude that our decision in *Padilla* was "clearly foreshadowed."[10]

■ Any reliance by the petitioners on the lack of an express recognition in the workers' compensation act that claims resolved by settlement are to be treated in the same manner as claims resolved by awards was misplaced in light of the caselaw. In the face of the precedent applied in *Padilla*, reliance alone cannot serve to demonstrate that this decision established a new principle of law where, as here, the parties arguing for reliance have not pointed to any decision or statutory provisions on which they relied to support their interpretation. Nor have the petitioners provided any evidence of the extent to which employers and insurers may have depended on the perceived absolute finality of settlement agreements in planning and conducting their operations. *Cf. Marinez*, 746 P.2d at 559 (burden of proof on issue of inequity is on party seeking nonretroactive application).

Under these circumstances, we conclude that our resolution of the issue presented in *Padilla* was clearly foreshadowed by the precedents, policy, and statutory language detailed and applied in *Padilla*.[11] Because this resolution was clearly foreshadowed, and because *Padilla* did not overrule past precedent on which litigants may have relied, we conclude that *Padilla* did not establish a new principle of law. Thus, no further analysis of the *Chevron* factors is required. *See Marinez*, 746 P.2d at 557 & n. 4. The threshold condition necessary to establish nonretroactive application of *Padilla* has not been met, and we therefore hold that our decision in *Padilla v. Industrial Commission*, 696 P.2d 273 (Colo.

1985), should be given retroactive application.

### III.

Because we hold that *Padilla* did not establish a new rule of law, we do not reach the analysis of the second and third *Chevron* factors considered by the court of appeals. However, our analysis of the first *Chevron* factor leads us to the conclusion that *Padilla* should be applied retroactively. Accordingly, we affirm the judgment of the court of appeals.

ROVIRA, J., dissents and ERICKSON, J., joins in the dissent.

ROVIRA, Justice, dissenting:

I disagree with the majority's conclusion that the rule of law established in *Padilla v. Industrial Commission*, 696 P.2d 273 (Colo.1985), should be given retroactive effect. *Padilla* established a new rule of law because it decided an issue of first impression whose resolution was not clearly foreshadowed. I also conclude that the purpose and effect of retroactively applying that holding may retard its operation and the inequity imposed by retroactive application may impose injustice or hardship. I would reverse the judgment of the court of appeals and remand the case to the Director of the Division of Labor to hear evidence on the second and third factors for retroactivity set forth in *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

In *C.A.K.*, we adopted the standard for retroactive application of decisions in civil cases set forth by the United States Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In *C.A.K.*, we described the factors involved as follows:

**10.** While the court of appeals assumed that the result in *Padilla* announced a new rule of law, it did note that it was "not entirely convinced that the *Padilla* result was not 'clearly foreshadowed' by the prior decisions referred to in that opinion." 754 P.2d at 769.

**11.** We find no merit in the argument of the amicus curiae that the 1985 amendments to the reopening provisions are "an expression of legislative policy recognizing the fact that a new principle of law was established in the *Padilla*

case." In *Ground Water Commission v. Shanks*, 658 P.2d 847 (Colo.1983), we stated that "[t]he responsibility for determining whether a rule of law will be granted retrospective or prospective application is an issue for the courts to resolve." *Id.* at 849. Thus, even if we accepted the amicus curiae's position that the 1985 amendments expressed a legislative policy as to the retroactive effect of *Padilla*, any such legislative determination would not be binding upon us.

First, the decision, if it is not to be applied retroactively, must establish a new rule of law. Second, the merits of each case must be weighed by looking to the purpose and effect of the rule in question and whether retrospective operation will further or retard its operation. Third, the inequity imposed by retroactive application must be weighed to avoid injustice or hardship.

*C.A.K.*, 652 P.2d at 607. As the majority correctly points out, the question of retroactivity arises only when a decision establishes a new rule of law. At 1224. For a decision to establish a new rule of law, it must either overrule clear past precedent on which the litigants may have relied or decide an issue of first impression whose resolution was not clearly foreshadowed. *Chevron*, 404 U.S. at 106, 92 S.Ct. at 355.

In *Padilla*, this court held that the statutory authority of the Director of the Division of Labor to reopen claims applied in cases resolved by settlement agreements as well as cases resolved by adjudication, and a settlement agreement between the parties could not abrogate that authority. The majority in *Padilla* relied on the "beneficient purpose" of the Workmen's Compensation Act, the language of the reopening provisions, and the prior cases of this court.

The majority concludes that the resolution of the issue presented in *Padilla* was clearly foreshadowed. For the reasons hereinafter set forth, I disagree.

First, the fact that *Padilla* was not clearly foreshadowed is shown by the language of the opinion itself. The majority quotes a portion of the *Padilla* opinion where the court stated that "several prior decisions of this court *suggest* that such conclusion must be *implied* from the policy and structure of the Act." *Padilla*, 696 P.2d at 279 (emphasis added). I do not believe that the holding in *Padilla* was clearly foreshadowed where prior case law merely suggested or implied the outcome. Although the *Padilla* court characterized its conclusion

as "inescapable," I did not then and do not now believe that conclusion was warranted.

Next, the conclusion that the holding in *Padilla* was not clearly foreshadowed is evident from the fact that courts in other jurisdictions had conflicting views on the issue at the time *Padilla* was decided. As set forth in *Padilla*, some courts agree with the majority's conclusion that "settled workers' compensation claims may be reopened on the ground of changed circumstances." *Padilla*, 696 P.2d at 280. Courts in other jurisdictions, however, "have reached contrary conclusions." *Padilla*, 696 P.2d at 280.

I also believe that *Marinez v. Industrial Commission*, 746 P.2d 552 (Colo.1987), supports my conclusion that *Padilla* established a new rule of law. In *Marinez*, this court held that *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo.1984), applied retroactively. However, in reaching that holding, the court concluded that *Engelbrecht* established a new rule of law because it decided an issue of first impression whose resolution was not clearly foreshadowed.

In *Engelbrecht*, we held that cost-of-living increases to federal social security disability benefits were not "periodic disability benefits" and therefore did not require corresponding reductions in state workers' compensation benefits under section 8–51–101(1)(c), 3B C.R.S. (1986). To reach this conclusion, we examined the language of the statute and determined that it was subject to two interpretations. Therefore, we looked to the intent of the General Assembly. To discern that intent, we looked at the purposes of the Workmen's Compensation Act: namely, to protect employees who suffer injuries, to give injured workers a reliable source of compensation, and to prevent double awards. Based on the language of the statute and previous decisions discussing the purposes of the act, we held that reductions in workers' compensation benefits were not required under section 8–51–101(1)(c), 3B C.R.S. (1986), when cost-of-living increases were made in federal social security disability benefits. This court in *Padilla* based its decision on the

same grounds: namely, the language of the reopening provision in the statute, prior cases of this court, and the "beneficent purpose" of the Workmen's Compensation Act.

Other similarities between *Padilla* and *Engelbrecht* are apparent from a reading of our discussion of *Engelbrecht* in *Marinez*. In both cases, the issue before the court was one of first impression. *Marinez*, 746 P.2d at 557; at 1226. In both cases, prior to our decision, insurers operated according to their understanding of the statute's requirements. In both cases the prevalent, if not uniform, practice of insurers before the decision was contrary to the interpretation given to the statute by this court. I believe that in this case, as in *Marinez*, we should find that a new rule of law was established.

Finally, I believe the reaction of the General Assembly in amending the Workmen's Compensation Act within two months of the *Padilla* decision to abrogate that decision supports my conclusion that it was not clearly foreshadowed. The majority dismisses this point by stating that

> "[t]he responsibility for determining whether a rule of law will be granted retrospective or prospective application is an issue for the courts to resolve." Thus, even if we accepted the ... position that the 1985 amendments expressed a legislative policy as to the retroactive effect of *Padilla,* any such legislative determination would not be binding upon us.

At 1228 n. 11 (quoting *Ground Water Comm'n v. Shanks,* 658 P.2d 847 (Colo. 1983)).

This rejection of the argument misconstrues the effect of the 1985 amendments. These amendments should not be construed as a pronouncement by the General Assembly that *Padilla* is not to be given retroactive effect; that question is one for the courts to resolve. These amendments are, however, a strong indication that the General Assembly did not think the conclusion reached by the majority in *Padilla* correctly reflected legislative intent and was clearly foreshadowed. On the contrary, these amendments demonstrate that the General Assembly assumed that final settlements in workers' compensation cases would be binding, a conclusion opposite the holding in *Padilla.*

Not only did the General Assembly assume that final settlements were binding, but also insurance companies, self-insured businesses, and employees were of the same opinion. The workers' compensation settlement provisions had existed since the enactment of the Workmen's Compensation Act in 1919, without a decision that such agreements were not final and binding until *Padilla* was decided in 1985.

Because I conclude that *Padilla* was not clearly foreshadowed and was therefore a new rule of law, I must next examine the second and third factors described in *C.A. K.* The second factor in the analysis requires a weighing of the merits of *Padilla* by looking to the purpose and effect of the rule to decide whether retrospective operation will further or retard its operation.

The effect of the *Padilla* opinion, as I stated in my dissent there, ignores the fact that settlement of disputed issues of liability and the extent of injury not only serves a useful purpose for the claimant, employer, and insurance carrier, but also allows efficient use of public resources. *Padilla,* 696 P.2d at 282 (Rovira, J., dissenting).

Furthermore, in *Padilla,* the majority opinion relied in part on the "beneficent purposes" of the Workmen's Compensation Act in reaching its conclusion. *Padilla,* 696 P.2d at 279. The "beneficent purposes" of the act include providing a reliable source of compensation to injured workers, and the financial stability of the fund from which injured employees receive benefits is an "important" concern. *Marinez,* 746 P.2d at 558–59.

As pointed out in the majority opinion, the Director of the Division of Labor and the Industrial Claim Appeals Panel assumed that *Padilla* applied retroactively in this case. The issue of retroactivity was not analyzed until the case reached the court of appeals. Therefore, no evidence was heard regarding the financial impact of retroactive application of *Padilla* on the

"important" concern of providing a reliable source of compensation to injured workers. Accordingly, I would remand the case to the Director of the Division of Labor for evidence on this question and a decision on the second factor in the retroactivity analysis.

The final consideration is the inequity resulting from retroactive application. The majority does not reach this question, and the court of appeals dismisses this factor, stating:

> [T]here is no evidence concerning the extent to which agreements of the kind at issue here were being employed by parties to workmen's compensation proceedings prior to *Padilla*, nor is there any estimate as to the number of claims that a retrospective application of *Padilla* would make eligible for reopening. Indeed, the employer here has failed even to provide an estimate of the additional cost to it that the retroactive application of *Padilla* would require in this case. Under this state of the evidence, there is simply no factual basis for concluding that substantial inequity would result from a retroactive application of *Padilla*. This record, therefore, provides no reasonable ground for limiting that decision's applicability.

*Loffland Bros.*, 754 P.2d 768, 770 (Colo. App.1988). This conclusion is unfounded because, as pointed out above, the issue of the retroactivity of *Padilla* was not considered by the Director of the Division of Labor or the Industrial Claim Appeals Panel. The first time the retroactivity of *Padilla* was considered was by the court of appeals. Because the retroactivity issue was not considered at any level with a fact-finding function, there was no opportunity to present evidence regarding any inequity that would be caused by the retroactive application of *Padilla*. Therefore, I would remand the case to the Director of the Division of Labor for evidence on the question of inequity caused by the retroactive application of *Padilla*.

Accordingly, I respectfully dissent.

I am authorized to say that ERICKSON, J., joins me in this dissent.